Good morning, Your Honor. Andrew Smith for the appellant. I should wait to see the time start. In this case, I'll start with the argument about Cindy Gunati. Cindy Gunati is not the debtor. She's married to one of the other officers of the debtor, Cinevision. She's an officer of Cinevision. But our argument is the standard of her contempt for failure to turn over estate property is custody and control. And the only findings of fact were made by Judge Russell and adopted by Judge Donovan. The only one that addresses that as to Cindy Gunati is the one that the mayor, specifically Frank Mayer, hid CDs at a building in which Cindy Gunati had. But the standards don't say title is the defining factor of custody and control. As I said in my brief, you could own an apartment house. People could be making drugs. You don't have custody and control. This is a little bit closer relationship, though. We not only have a business relationship, but we have a marital relationship and you have an attorney-client relationship. Well, that's actually one of our biggest objections. First of all, I don't think this court can make further findings of fact. And I think the findings of fact we're stuck with, so to speak, are the ones Judge Russell made and that were adopted by Judge Donovan. And I'm not going to get to the standard. It wasn't Judge Russell, was it? I thought it was Judge Serzola. Serzola. Pardon me, Your Honor. That's right. I made a mistake. There's a big difference, Barry Russell. Well, Judge Russell's been here so long. I just keep saying Judge Russell. Well, in the three facts that I just gave you, that is that he had a commercial relationship, they were husband and wife, and she was also acting as his attorney, your response was that we didn't want this to go beyond the record. I thought all of those things were acknowledged. They're acknowledged, but if the court, Your Honor, is going to add these together to make an additional finding of fact, I don't think that that would be the function of this court. And I actually don't think that those could be almost unconstitutional. I don't think it's that logical that if you're married to someone, I could use it the opposite way. It might not be politically correct. Well, the wife may be someone much less in control than somebody, you know, who's got a business partner. Well, because the husband often controls the relationship. I don't think we can speculate on this, and I don't think, yes, it very well may be true she's the lawyer, she's married, and they may jointly have in concert decide we're going to sequester, hide, or fight this property and defy the court, but very well maybe not. And now I will mention the standard is clear and convincing, which is often described as no reasonable person would disagree. It's a surmise that being married or being the lawyer that she's sort of in on this, but it's very the specific facts show Mr. Mayer hid it. But it's clear and convincing, and then the two elements are that you must – that you have to have an order, right? You have to have the bankruptcy order, the stay, the automatic stay, and you have to have known about it and violated it. So if you knew of it and then you violated it, those are the elements. What's not clear and convincing about what she knew and what she did? The 362 is generally to keep creditors from collecting. It's 542 is the one that should be there. And I've cited cases. The cases don't state that. If that was the case, then there'd be no – there'd never be an argument. There would be 362. The trustee decides. He decides it's property of the state. He says he wants it. He says it's consequential, and you have no argument. You must turn it over. That's – 362 really is not as applicable. 542 says – is sort of a standing order that says you must turn it over. And then the cases that deal with the specific facts we have here state you're not going to be held in contempt if you didn't have custody. If you couldn't comply, it's unfair to say, you know, you're in contempt of a court order. If you could not – and if she very well could have been ordered by her husband not to comply. But if you don't have the property or if you don't know about it – and, again, we don't have enough to show that. And I do think that using a status that – unless the status sort of shows, you know, refuse my argument about custody and control, but saying that you're married to the other person, I don't think there's much arguable force there. It's certainly not clear and convincing. Second – Okay. Well, let's take the first – the two elements are – I'm now looking at our decision in – I think this is Naufer. Yeah. That's the one. That says that willful violation does not require a specific intent to violate the automatic stay, rather the statute provides for damages upon two things, a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. So if we start with that first element, did the defendant know of the automatic stay, there isn't any question here, right? Automatic stay is – no, I agree with both of that. But what is the automatic – this does not – Right. But you knew of the automatic stay. So if you're withholding things that should have been disclosed to the bankruptcy court. Now, you may have a dispute as to whether they are of inconsequential value or whether they really belong to the estate, but you've got an obligation to disclose things here. Where – And so you knew if your client knew of the automatic stay. That's not contested, right? Your Honor, that's not contested because automatic stay, if we read it, it does not say that failure to turn over. Automatic stay is addressed to creditors and anything to collect a debt or to advance your position – Or anything of value. Well, it's meant to collect, but 544 is the specific statute. And I've cited case law, and cases don't really use these turnover items as a violation of the stay. I even cited that the stay doesn't apply to the trustee, but the specific statute is 542. We must turn over. Again, I don't think if there's anything in the stay, it's a real stretch to say that – Right. But we're not under 5 – As I understand, we're not under 542 because the trustee apparently is not. Not an individual. Yeah. Well, how are we under 36 – Well, we're under 105. 105. Pardon me? We're under 105. Well, 105 is the catch-all. It is a catch-all, but we have very specific law, the Naufer case, addressing the bankruptcy court's power under 105. We set out the elements. We've listed it all there. So 105 is a facilitating statute that people jokingly say the bankruptcy judge can do whatever he or she wants. Yeah, counsel, except that we've got precedent on point, and we don't get to decide at this point as a panel that we were wrong in Naufer to affirm a bankruptcy judge on the grounds of 105. But nobody argues 105 as a facilitating statute. There must be an underlying specific statute that gives the judge the power to – that doesn't have to be specifically delineated to enforce another statute. If it was just used without what I've just said, it would be just omnipotent power for some judge to do whatever they want. Right. The standard we set is civil contempt. Pardon me? The standard is civil contempt. Right. And contempt means defying a court's order. And that goes to one other matter, which is I did quote, this was arguable whether the CDs were of negligible value. My client had a right to argue about that. It turns out they were. The trustee had a great disinterest later. The other assets were post-petition, or at least there was an argument there. So for days there in front of Judge Donovan, he could have very well said, you're defying my order. If I were to turn it over tomorrow, but we'll keep litigating. But he did not do that. Mr. Smyth, a question that was not answered in the brief. Was the property turned over after Judge Zozzola's decision on summary judgment? After Judge – Yeah. Judge Zozzola ruled in March. Yes. And then the contempt proceeding was filed I think sometime in April. Now, prior to the filing of the contempt proceeding, was the property in fact turned over? Because the record seems to be silent. And it does appear to be talking about what they did prior to March. And it's silent on what happened after March. I didn't look, but assume it wasn't. That would require further findings of fact, not – No, no, I'm not asking you to assume. I'm just asking, the record is silent as far as I'm concerned. Maybe there's something in it that tells it. Was the property turned over? I don't think it was. And that argues that Judge Donovan should have made further independent findings of fact on that matter. I don't think there's anything wrong with me strictly holding the trustee to the record in that the judge decided he would use findings not under the clear and convincing standard and say it's law of the case, which it's not, because it's not collateral estoppel if there's a different standard. Counsel, I'm a little puzzled. I'm a little confused here by your answer to Judge Bartle's question. Okay. Because there's correspondence in the record from Ms. Guarnatti to Mr. Urest offering to have them come and get the CDs. Yeah. And there's repeated letters from her. And I don't know if he responded or not because I don't see that in the record. What I do see in the record is her offer to have the CDs turned over. So it appears that the answer to Judge Bartle's question was we tried to get them to come and collect the CDs. Evidently, they didn't want them. Well, that might help my side of it because there's nothing willful. But, Your Honor, we're not a trial court here. And if the court looks to the record and says, well, there's some evidence that if I were the trial court, I would find clear evidence. Counsel, I thought what I just cited was very much in your favor. You didn't seem to want it. Well, I do think it's in my favor. Maybe I shouldn't say too much. But, yes, I think it's in my favor. But, nevertheless, I don't want to go through the record as if we were a trial court and then the court decide things. I think they decided that Judge Zolo's findings were law of the case and that was it and it was the wrong standard. I'll reserve the last four minutes, Your Honor. Okay. All right. You may do so. Thank you, Mr. Smith. Good morning, Your Honor. I'm Daniel Urest, and I represent the appellee, the trustee, Edward Wolkowicz. During the contempt proceedings, the Bankruptcy Court considered evidence of the appellant's which included analysis of the undisputed facts and conclusions of law that were adjudicated in the turnover action. The evidence was analyzed by the Bankruptcy Court and used in deciding whether there was clear and convincing evidence of contempt by appellants. Judge Donovan, who was the judge that held these individuals in contempt, was he relying he was relying on the record before Judge Zorzolla, correct? In part, he was, absolutely. Well, it's sort of unclear, but he keeps referring to the findings of fact conclusions of law of Judge Zorzolla, and Judge Zorzolla was deciding a motion for summary judgment, and the standard of proof is different in that proceeding than in a contempt proceeding. Wouldn't you agree? Yes, and I recognize that. So there's preponderance of the evidence versus clear and convincing evidence. That's correct. Now, Judge Zorzolla, his findings of fact, to some extent, were limited. He didn't get into, he said the property belonged to the estate. That's clear, and he went through some of the background. Did he ever say that, clearly the mayor and Ganondi knew about the automatic stay, clearly, because they had gotten a letter, to that effect, from you. But what about the intent to violate it? Judge Zorzolla obviously found that there was a violation because he ordered the property be turned over. But what about this concept of intent to violate? People can violate something without having the intent to do it, and Judge Zorzolla never said a word about intent, which is another way of saying willful. And then we get to Judge Donovan. He didn't take any testimony, as far as I could tell. He relied on what Judge Zorzolla did, and then he sort of talked about that he may have had some knowledge of this matter because he had been the bankruptcy judge that had handled it before Judge Zorzolla. So he's just sort of saying, based sort of on my knowledge of what's going on here, plus Judge Zorzolla's findings, I find Mayor Ganondi in contempt. There was an extensive record before Judge Donovan, in addition to the findings of fact from the turnover action. That included deposition testimony, which wasn't relevant to the analysis of whether to order turnover of property. And it was deposition testimony of Frank Mayer, which acknowledged that if there were accounts receivables that were due in owing to the debtor, that he had a duty to turn them over. There was also evidence of when, for example, there was a $10,500 account receivable that was stolen, essentially. That's the evidence. What's the answer to the judge not having made a willfulness finding? He made a willfulness finding based on the totality of the evidence. Where did he say that? He says willful misconduct, but on what does he base that? Well, he based it on, we had an April 2014 demand letter from the trustee to Mr. Mayer and City Ganondi. And that letter clearly outlined the exact property that we needed from the estate to turn over, which is essentially DVDs and the high-value post-production film equipment. And that letter also warned Ms. Ganondi and Mr. Mayer that if you don't turn it over, you're subject to contempt sanctions for violating the automatic stay. That letter was part of the record. That was given to them at least three weeks before the trustee was forced to file a lawsuit for turnover. So that identified the property that they refused to turn over. They didn't bother responding to that letter, and the lawsuit was filed. That was a key piece of evidence that showed the intent to violate the automatic stay but not turn over property that the trustee had identified as being the estate that they had that they didn't turn over. So that's just showing a willfulness right there. They knew about it. They refused to turn it over. They made us file a lawsuit. Well, does that automatically follow? Because you have the automatic stay, which is in general terms. The automatic stay didn't say turn over the DVDs, right? No, but the turnover statutes are self-explanatory. I understand, but I'm saying that the automatic stay is different than many court orders where people are held in contempt, where the judge says do X specifically, and you don't do X. Then there's a contempt hearing and you're held in contempt. Yes, that's Section 542. So the bankruptcy judge always has to find that there was an intent to violate as opposed to just a violation, correct? That's correct. Because there's a difference between the two. Yes. Now, Judge Donovan couldn't simply rely on Judge Zorzola's findings because Judge Zorzola didn't find there was an intent. He just said there was a violation. Turn the property over. That is correct. And he did it by a preponderance of the evidence, and under contempt it has to be by clear and convincing evidence. No, Judge Zorzola issued the turnover findings under a clear and convincing. No, he didn't. Under a preponderance of the evidence. Right, but that's not the standard for contempt. No, and that's not what took place here. Because what took place here was the court evaluated and used the evidence, including the undistributed facts from the turnover action, which were basically vanilla facts. They were like, you had the property, you had to turn it over. You didn't turn it over. But he doesn't cite anything. He just says, based on the record, and then, but we know specifically from the hearing, he's constantly referring to Judge Zorzola's findings and conclusions of law. And I think he clearly relied on those. He relied on those in part. And there was also other evidence that was part of the OSC proceedings that involved, that had the extra, the deposition testimony, which was not the same testimony, I believe, before Judge Zorzola. That was before Judge Donovan. But Judge Donovan makes no reference to anything else specifically in his order. And certainly during the hearing, he doesn't say anything about, well, the deposition testimony, this, and that, and the other. He doesn't say a thing about it. Well, he talks about the record. Well, what record? He talks, well, don't forget, sorry. He was intimately familiar with this case because he was on it since 2011. See, isn't that a concern that you're sort of relying on what you know about it, a judge, and not making specific findings to hold somebody in contempt, saying, okay, look, I know about these guys. They're bad apples. And, you know, you don't have to, I don't have to make any specific findings because I know it. Judge Donovan didn't do that in this case. He actually, he looked at the papers that the trustee filed. He looked at the evidence. And it was more than just, again, the findings of fact. It was the, again, the demand letter. It was. But, of course, papers are not evidence. In other words, somebody files a pleading and files a brief. That's not evidence. No, that's correct. But there was deposition testimony, which is. But he makes no reference to any of this. Well, that was, that was part of the record that he considered, and that was filed in the court. So we have to assume that the judge, the judge did reference the fact that he read all the papers, because I believe there was a big deal made by the appellant's counsel that they filed a brief that wasn't considered. But if you look at the transcript, Judge Donovan specifically says I considered all of the papers that were filed in this case. And that was all written, all that thing, all of our discussion today, it also includes all of the written material that Judge Donovan acknowledged on the record that he read and considered. I'll ask you. Okay. Was the property turned over? From my memory, I want to say it was turned over after we filed the order to show cause for a contempt. But that's not in the record at this point. Not in the record, no. Thank you very much. Okay. Well, I'm not going to say much because I don't think I could have argued it better than Justice Bartle, and that's one, one factor. But just maybe make a comment on the trustee's counsel's argument. To me, it seems like he's inviting this court to make findings that Judge Donovan must have made. You know, Judge Donovan read everything. Judge Donovan considered everything. Maybe that would go, cut the opposite way. If he did read and consider everything, and Judge, pardon me, Zersolo also. Yes, they did all that. And the trustee's counsel may say any reasonable person would believe this or that. But the findings weren't made, and they're not there. Thank you, Your Honors. I have a question, counsel. Let's assume that Judge Donovan didn't make an explicit willfulness finding and that he didn't evaluate the others. We agree that he didn't apply the clear and convincing standard of evidence. Your defense, as I understand it, to willfulness was simply that they had a good faith belief in the rightness of their position. How does that avoid willfulness? Your Honor, I know the court says they, but I think they should be separated. Cindy Gennady, as one of the justices said, even wrote a letter. We'll turn it over if you want to. And that's not our only position that, you know, we thought we were legally right as to Cindy. I think even if you're a lawyer, unless you're, you know, a bankruptcy lawyer, and even then, you don't really understand that 365 is an order, you know, creditors are stayed. But there may be, I'll concede, it might be an order you have to turn over assets. It's not super clear. 542 is a statute, but us bankruptcy lawyers know it's a standing order. So I would define willfulness as an attitude by, let's say, Cindy Gennady, which surely doesn't seem to be there at all. It was just a heck with the court. I don't care what you say. I'm just going to do what I said. And as one of the justices read, her attitude was not that. They're sitting there. They're litigating. Yes, that is part of my order. They're litigating whether it's property of the state, whether it's consequential value. And who would know that, well, the ---- But wasn't their responsibility to turn it over or at least disclose it and say we're holding this, but we thought it was of inconsequential value, which is not required to be turned over, but at least concede that they've got it rather than force the other side to identify it and make them produce it? Well, that was done right up front. Nobody said these CEDs didn't exist. That was sort of part of the defense. The other part was we don't think it's property of the state because it was a post-petition generated asset. There was also transfers. I might mention that the summary judgment was lost because my client didn't file a response in time, so he never really got to bat or had to stay in court an actual factual finding on any of this. So willfulness, if willfulness would not be a separate thing or criteria if volitional and willful was the same thing. If simply not doing it also equaled willful, then we wouldn't have the two standards. If we thought that Judge Donovan hadn't made findings sufficient to support this, do we simply reverse the order or do we reverse and remand with instructions to do it over again? Well, I'd like to say the first part, but it's more likely the second part, reverse and do it over again. Although another argument would be on Cindy, for example. I just think there's no way, you know, sort of like double jeopardy. There's no way the facts, I think, add up that she had custody control and willfully defied the court. So, of course, we would like on her to be reversed and dismissed. Mr. Mayor, it seems I would have to be if the court agrees with my failure to put the right standard. Well, it would have to be sent back on him and the judge to do it again with the right standard. Thank you. Thank you, counsel, for the argument. The case is submitted.
judges: Fisher, Bybee, Bartle